UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FELICIA W., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 20-CV-573-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.      Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Background and Procedural History

This case has a lengthy procedural history. Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act (Act), and a Title XVI application for supplemental security income, on November 11, 2013. (R. 134; *see* R. 20-21). Plaintiff alleged a disability onset date of February 15, 2013. (*See* R. 23). She alleged disability due to high blood pressure, high cholesterol, type 2 insulin-dependent

diabetes, migraines, neuropathy in the upper and lower extremities, and depression. (R. 134-135). Plaintiff was 51 years old on her alleged onset date. (R. 134). Plaintiff holds a GED, and before her alleged disability, she worked as a collection clerk and a customer service clerk. (R. 138, 652-653).

Plaintiff's application was denied on initial review and on reconsideration. Subsequently, her claim has been heard by Administrative Law Judges (ALJs) on four occasions, including testimony by Plaintiff and Vocational Experts (VEs). (R. 48-131). The ALJ has issued an unfavorable decision following each of these hearings. (R. 17-47, 192-207, 212-232, 237-259). The Appeals Council remanded the first three ALJ decisions, in turn, for further consideration. (R. 208-211, 233-236, 260-263). The most recent hearing, on February 24, 2020, followed the Appeals Council's remand order dated February 4, 2019. (R. 48-57, 260-263). On March 9, 2020, the ALJ issued a decision denying disability benefits. (R. 17-47). The Appeals Council issued a decision on September 5, 2020 denying Plaintiff's request for review of the ALJ's decision. (R. 1-4). Following the Appeals Council's denial, Plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's March 9, 2020 decision under 42 U.S.C. § 405(g).

**III.   The ALJ's Decision**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v.*

*Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 15, 2013. (R. 23).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that Plaintiff has severe impairments of diabetes mellitus with neuropathy, hypertension, chronic kidney disease, and obesity. (R. 23).

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that Plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (musculoskeletal system), 6.00 (genitourinary disorders), and 11.00 (neurological disorders). (R. 25). The ALJ also noted other Listings in connection with Plaintiff's hypertension and chronic kidney disease, and acknowledged the criteria set forth in Social Security Ruling (SSR) 19-2p regarding obesity. (R. 25-26).

The ALJ also discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *See* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a mild limitation in each of the four relevant domains—understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 24-25). Because Plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. (R. 25).

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can never climb such things as ladders, ropes or scaffolds. [Plaintiff] should avoid exposure to heights and open machinery. [Plaintiff] can no more than occasionally climb such things as stairs or ramps, bend, stoop, crouch or crawl. [Plaintiff] can no more than frequently handle or feel. [Plaintiff] cannot operate foot controls.

(R. 26). Citing the VE's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work as a Collection Clerk (Dictionary of Occupational Titles (DOT) # 241.357-010 and Customer Service Clerk (DOT # 241.361-014). (R. 37). The ALJ therefore found Plaintiff not disabled at step four. (R. 38).

**IV.  Discussion**

Plaintiff alleges that she has disabling neuropathic pain and numbness in her hands and wrists. She contends the RFC limitation to frequent handling and fingering bilaterally is not based on substantial evidence in the record. In her hearing testimony and other statements, Plaintiff described "a history of diabetes and neuropathy resulting in pain and numbness in her hands and feet," and "an occasional pinching sensation like a voodoo doll." (R. 27; *see also* R. 33-34).

In finding Plaintiff has an RFC for frequent handling and fingering, the ALJ cited Plaintiff's "daily activities, coupled with testing and examination observations." (R. 34). The ALJ's decision specifically cited the medical evidence in the record, including objective results from consultative examinations by Michael Karathanos, M.D. in February 2015 and September 2019, and the opinion testimony of Subramaniam Krishnamurthi, M.D. on July 24, 2019. (*See* R. 35-37).

Under the regulations applicable to Plaintiff's claim, an ALJ must consider the following factors in deciding the weight to give to any medical opinion:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion

>and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered, and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see* 20 C.F.R. § 416.927(c). The ALJ must provide good reasons for the weight he ultimately assigns to each opinion. *Watkins*, 350 F.3d at 1300-01 (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be specific enough to make clear to any subsequent reviewers the weight the ALJ assigned to the opinion and the reasons for that weight. *See id.* at 1300; *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (stating that the ALJ must give "specific, legitimate reasons" for rejecting an examining physician's opinion).

### Dr. Karathanos

On September 4, 2019, Michael Karathanos, M.D., performed a neurological consultative examination. (R. 33).[2] Dr. Karathanos noted "fairly well preserved strength in the upper and lower extremities without any definite weakness, rigidity, spasticity, involuntary movements, tremors, atrophy or fasciculations." (R. 1463). He noted "slightly decreased fine motor movement control in both hands." (R. 1464). However, he found that Plaintiff could effectively oppose the thumb to the fingertips and manipulate small objects. (*Id.*). He assessed diffuse sensorimotor polyneuropathy, "most probably diabetic." *Id.*

---

[2] Dr. Karathanos also examined Plaintiff earlier in her application proceeding, on February 25, 2015. (R. 29).

Dr. Karathanos completed a medical source statement (MSS) indicating that Plaintiff can lift up to 10 pounds, sit for two hours at a time and for six hours total in a workday, stand for 30 minutes at a time and for one hour total, and walk for 15 to 30 minutes at a time and for 45 minutes total. (R. 36, 1466). He opined that Plaintiff can only occasionally (up to 1/3 of the time) finger or feel with either hand, and that she can never operate foot controls with either foot. (R. 1467).[3]

The ALJ rejected the functional limitations in Dr. Karathanos's opinion, stating that they are inconsistent with Dr. Karathanos's examination findings. An ALJ may properly reject an examining medical source's opinion, as long as the ALJ provides sufficient reasons. *See Mays v. Colvin*, 739 F.3d 569, 574-76 (10th Cir. 2014). The decision stated that "mildly positive Tinel's signs," such as Dr. Karathanos noted, do not "result in 'rare' ability to use the hands." (R. 37). The ALJ also found this opinion inconsistent with Plaintiff's reported daily activities, which include preparing meals, handling personal hygiene, and sorting, handling, and using paper files. *Id*. As such, the ALJ provided sufficient reasons for rejecting Dr. Karathanos's functional assessment.

The ALJ then stated Dr. Karathanos's objective findings "reasonably support the [RFC] assessed." (R. 37). However, it was error for the ALJ to rely on Dr. Karathanos's objective findings while also rejecting the manipulative limitations Dr. Karathanos assessed. An "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of

---

[3] The VE testified that the functional limitations in Dr. Karathanos's opinion would preclude all competitive work, including Plaintiff's past relevant work. (R. 55-56).

nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Moreover, in so doing, the ALJ improperly substituted his own judgment over that of a physician with respect to medical findings. *See Lax*, 489 F.3d at 1089 ("[A]n ALJ cannot substitute her lay opinion for that of a medical professional"); *Winfrey,* 92 F.3d at 1022; *see also Strickland v. Astrue*, 496 F. App'x 826 (10th Cir. 2012) ("We have repeatedly stressed that an ALJ may not interpose his own judgment over a physician with respect to medical findings."). Accordingly, Dr. Karathanos's objective findings are not substantial evidence supporting less restrictive manipulative limitations than Dr. Karathanos himself assessed.

### Dr. Krishnamurthi

The ALJ accorded "some weight" to the non-examining source opinion of Dr. Krishnamurthi, who provided hearing testimony on July 24, 2019. (R. 35). Dr. Krishnamurthi noted that the record did not show continuous treatment for carpal tunnel syndrome. (R. 35). He also stated that in reviewing Plaintiff's medical records, he had not found any recent (post-2015) objective medical evidence relating to carpal tunnel syndrome or neuropathy affecting her hands. (R. 67-69 ("I saw she has mildly positive Tinel signs bilaterally of the wrist. And it's possible carpal tunnel syndrome bilaterally. But then afterwards, I did not see much of the carpal tunnel syndrome."). He opined that Plaintiff could perform a limited range of light work. *Id*. Regarding manipulation, Dr. Krishnamurthi opined Plaintiff has no limitation in reaching, handling, fingering, and grasping. *Id*.

On further questioning by Plaintiff's counsel, Dr. Krishnamurthi testified as follows:

9

Q: So you think [Plaintiff] needs more testing?

A: . . . [T]he EMG should be . . . a little bit more helpful. Without that, . . . I still considered the neuropathy as a mild impairment. I gave this RFC based on what I found in the medical records. . . . See the EMG can confirm a little bit more stronger[sic]. That [sic] even tell about her carpal tunnel syndrome also even though it is not there. . . . It would give me objective findings.

Q: You said the record – there could be more, or there needs to be more?

A: Needs to be more objective findings.

Q: Okay. But she's complained of numbness in her hands and feet, and then you said there's no limitations with regard to use of her hands.

A: Correct.

Q: Okay. So . . . you don't think she has numbness in her hands?

A: Well, it is . . . not exhibited in the record. I think what they're talking about, when they're talking about objective physical examination, the[] only – I could find is medical record is on the lower extremities as of 2017. Nothing on upper extremities.[4]

Q: She hasn't complained of that?

A: Objective. You know you need to have more objective findings.

. . .

Q: Well, so Doctor, are you recommending that she undergo some more testing?

A: Well, the EMG. . . of the four extremities will give us a little bit more . . . if she complains of numbness of her hands, the EMG will tell us if there are any neuropathy of her hands as well.

---

[4] As fully transcribed, the first sentence of Dr. Krishnamurthi's response reads: "Well, it is – I'm not saying it is not exhibited in the record." (R. 70). However, in context it is clear Dr. Krishnamurthi meant that the alleged numbness in Plaintiff's hands "is not exhibited in the record."

> Q: Okay. So you're recommending that she have an EMG for her hands . . . and legs?
>
> A: That's correct.
>
> Q: Okay. And that would give us a better picture of what her status is?
>
> A: That's correct.

(R. 70-71).

In the weeks following this hearing, Plaintiff underwent additional examinations. (See R. 32-33). On August 28, 2019, Plaintiff saw Sri K. Reddy, M.D. for a consultative examination. (R. 32). Dr. Reddy also performed electromyography (EMG) testing, which showed that Plaintiff had severe right and moderate left median nerve entrapment of the wrists, and bilateral distal upper extremity neuropathy in the wrists. (*See* R. 32, 1429).

Dr. Reddy completed a medical source statement (MSS), opining that Plaintiff can lift and carry no weight, sit eight hours at one time, stand and walk a total of two hours each and one hour without interruption, occasionally reach, but never handle, finger, push, or pull. (R. 35, 1433-1438). Dr. Reddy attributed these limitations to low back pain and neuropathy. (R. 1433-1438). However, the ALJ rejected this opinion, explaining that "[s]pecific findings made by Dr. Reddy are inconsistent with the degree of limitation purposed[sic]." (R. 36).

In explaining the weight accorded to Dr. Krishnamurthi's opinion, the ALJ's decision acknowledged that Dr. Krishnamurthi "did not have the benefit of the electrodiagnostic test results completed after his review." (R. 35). Thus, the decision sought to explain why the ALJ found that additional RFC limitations were warranted. But that

explanation falls short, because Dr. Krishnamurthi indicated that his functional assessments could change if the record contained more objective evidence of impairments affecting Plaintiff's upper extremities, such as carpal tunnel syndrome and/or diabetic neuropathy. (R. 71).

Here, there is no dispute that such evidence would encompass the subsequent EMG testing. However, Dr. Krishnamurthi did not have an opportunity to opine on what additional functional limitations, if any, would be supported by the complete medical record. Thus, in weighing Dr. Krishnamurthi's opinion more heavily than that of Dr. Reddy, the ALJ effectively ignored the EMG evidence. *See, e.g., Chapo*, 682 F.3d at 1292 ("Thus, while Dr. Amin's opinion may have been 'supported by and consistent with the medical evidence of record' when he gave it in early 2008, it does not account for material objective evidence developed long afterward."). Accordingly, Dr. Krishnamurthi's opinion is not substantial evidence supporting the ALJ's RFC limitation to frequent handling and fingering.

### Other Evidence

Additionally, the ALJ failed to properly address the EMG testing evidence. This is reversible error. *See Mays*, 739 F.3d at 576 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)) ("[I]n addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Remand is therefore required for further evaluation of the medical evidence, as well as additional explanation of the evidence supporting the RFC determination.

Defendant argues that the ALJ reasonably assessed an RFC within the spectrum of medical opinions in the record, noting that the RFC assessment was more restrictive than the opinions of the state agency consultants and Dr. Krishnamurthi, but less restrictive than the opinions of Dr. Karathanos and Dr. Reddy. (Def.'s Br., Doc. 19 at 4-5 (citing *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016)). However, the ALJ's decision does not indicate that the RFC determination represents a middle-ground in the spectrum of these opinions. Rather, the ALJ rejected the state agency consultants' opinions, explaining that these sources "did not have the benefit of a fully developed record at the time of their review." (R. 35 (according "little weight" to state agency consultants' opinions). Moreover, as set forth above, the ALJ was not entitled to rely on Dr. Krishnamurthi's opinion while also ignoring the subsequent EMG testing.

The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's post-hoc effort to salvage the ALJ's decision would require the court to overstep its institutional role and usurp essential functions committed in the first instance to the administrative process); *Robinson v. Barnhart,* 366 F.3d 1078, 1084-85 (10th Cir. 2004) (per curiam) (same); *SEC v. Chenery Corp.,* 318 U.S. 80, 88 (1943). Here, Defendant's argument relies on post-hoc rationalizations that are not apparent from the ALJ's decision. The Court therefore must reject this argument.

The ALJ's decision also cited examination findings of Jerry First, M.D. on January 27, 2014. (R. 37; *see* R. 947-954)). The Court notes that the objective findings in Dr. First's

report provided some support for the RFC limitations. However, Defendant does not argue that Dr. First's 2014 examination findings, alone, are sufficient evidence to support the ALJ's RFC determination. Any such argument is therefore waived. Furthermore, the ALJ's failure to adequately address the subsequent EMG testing, as discussed *supra*, would require remand, regardless.

Finally, the ALJ cited Plaintiff's activities as evidence supporting the RFC, including that Plaintiff "is able to cook simple meals, perform some household chores, and drive." (R. 37). However, it is well established that an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). For the reasons explained herein, the ALJ's decision failed to set forth substantial evidence for the manipulative limitations in the RFC.

## V.   Conclusion

For the reasons set forth above, the Court finds the ALJ's RFC determination is not supported by substantial evidence. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

ORDERED this 25th day of March, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge